IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OUYEINC LTD., <br><br> Plaintiff, <br><br> v. <br><br> INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS ON SCHEDULE "A," <br><br> Defendants. | Case No. _____ |

# COMPLAINT

Plaintiff, Ouyeinc Ltd. ("Plaintiff" or "Ouyeinc"), by and through its counsel, hereby brings the present action against the partnerships and/or unincorporated associations identified on Schedule A, attached hereto (named, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendants have committed the acts as described herein within this judicial district.

3. Upon information and belief, the Defendants are subject to this Court's specific and general jurisdiction due to at least their substantial business in the forum, this business includes: (i) at least a portion of the acts complained; (ii) regularly conducting or soliciting business, and/or deriving substantial revenue from goods and services provided to individuals in Illinois and in this Judicial District; and (iii) directly targeting consumers in the United States, including Illinois, by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using infringing and counterfeit versions of Plaintiff's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using infringing and counterfeit versions of Plaintiff's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused substantial injury in the State of Illinois.

## PARTIES

4. Plaintiff, Ouyeinc Ltd., is a Colorado Corporation, with a principal place of business at 36 South 18th Avenue, Suite A, Brighton, CO 80601.

5. Defendants are individuals and businesses who conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces identified in Schedule A, attached hereto. Each Defendant targets the United States, including Illinois, and has offered to sell and/or has sold and/or continues to sell counterfeit and infringing products to consumers within the United States, including Illinois and in this Judicial District.

6. While Defendants' identities and locations are now unknown to Plaintiff, upon information and belief, Defendants are primarily individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## BACKGROUND

7. Plaintiff owns United States trademarks for its unique wax warmer products, including U.S. trademarks No. 6,033,871, 6,033,730, and 6,033,750 for "Pro-Wax100" (collectively the "Pro-Wax100 Marks"), as shown below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 6,033,871 | PRO-WAX100 | Electric warmers to melt scented wax tarts, electrical heating apparatus to melt and dispense wax, heating installations, and wax heater in class 011 |
| 6,033,730 | *Pro-Wax100* | Electric warmers to melt depilatory wax; Electric warmers to melt scented wax tarts in class 011 |

3

| 6,033,750 | *Pro-Wax100* | Electric warmers to melt scented wax tarts; Heat generators; Heating apparatus for solid, liquid or gaseous fuels; Heating installations in class 011 |
|---|---|---|

8. The above U.S. registrations are valid, subsisting, unrevoked and uncancelled. The registration for the Pro-Wax100 Marks constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the Pro-Wax100 Marks pursuant to 15 U.S.C. § 1057(b).

9. The Plaintiff makes, sells and promotes wax warmers whose branding is protected by the 6,033,871, 6,033,730, and 6,033,750 trademarks. These products include a number of variations of wax warmers offered by the Plaintiff. These products are offered for sale and/or sold in the United States, including in Illinois.

10. The Plaintiff's Pro-Wax 100 wax warmer products have been commercially successful with their distinctive and recognizable branding providing differentiation to other competitors' wax warmer brands providing consumers with an understanding of the products quality.

11. The Pro-Wax100 Marks have been widely promoted, both in the United States and throughout the world. Consumers, potential consumers and other members of the public recognize that Pro-Wax100 Marks sold in the United States originate exclusively with Plaintiff.

12. Plaintiff maintains quality control standards for all products bearing the Pro-Wax 100 Marks. Genuine products bearing the Pro-Wax100 Marks are distributed exclusively through Plaintiff's online storefronts on Amazon. Sales of Plaintiff's Pro-Wax100 products via Plaintiff's

stores represent the entirety of Plaintiff's business. Plaintiff's stores feature proprietary content, images and designs exclusive to Plaintiff.

13. Plaintiff's Pro-Wax 100 Marks are distinctive and largely popular worldwide symbols of excellence in quality and are uniquely associated with Plaintiff and, thus, Plaintiff's Pro-Wax100 products have generated consistent substantial revenue since the Pro-Wax100 Marks' first use in commerce.

14. Plaintiff's Pro-Wax100 Marks have never been assigned or licensed to any of the Defendants in this matter.

15. Plaintiff's Pro-Wax100 Marks are a symbol of Plaintiff's quality, reputation and goodwill and have never been abandoned.

16. Plaintiff has committed and expended substantial time, money and other resources developing, advertising and otherwise promoting products featuring the Pro-Wax100 Marks.

17. Upon information and belief, the Defendants offer counterfeit versions of the Plaintiff's Pro-Wax100 wax warmers in the United States and across the world. Upon information and belief, the Defendants manufacture, or purchase from manufacturers, wax warmers that use branding based on the Plaintiff's registered trademarks.

18. As a result of Plaintiff's substantial advertising and promotional efforts, as well as the high quality of the products and services associated with the Pro-Wax100 Marks, the Plaintiff has earned valuable and residual goodwill and reputation as the sole source for such goods and services in the United States.

19. Upon information and belief, the Defendants have created and continue to create numerous Wish stores and design them to appear to be selling genuine Pro-Wax100 products, while selling infringing and counterfeit versions of Plaintiff's products. The Wish stores

identified in Schedule A appear to be related entities in some cases. Some stores share several distinct and unique features such as using nearly identical store designs and using identical product pages, including identical pictures and product descriptions. This establishes a logical relationship between them suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

20. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Wish stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing and/or counterfeit Pro-Wax100 Marks-protected products, to consumers within the United States, including Illinois and in this Judicial District.

**DEFENDANT'S UNLAWFUL CONDUCT**

21. The success of the Plaintiff's Pro-Wax100 branding has resulted in its counterfeiting and being infringed upon by a wide range of different marketplace stores. Plaintiff has identified numerous marketplace stores on Wish.com which are offering for sale, selling, and importing counterfeit and infringing Pro-Wax100 Marks-labeled products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating subsequent online Stores.

22. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores.

On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting and infringing operations, and to avoid being shut down.

23. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, infringing and counterfeit Pro-Wax100 products for sale in the Defendant Internet Stores bear similar infringing indicia to one another, suggesting that the infringing and counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the similar accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the similar incorrect grammar and misspellings, and the use of the similar text and images, including content copied from legitimate Pro-Wax100 product listings.

24. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other online infringing cases use a variety of methods to evade enforcement efforts including simply registering new online marketplace accounts once they receive notice of a lawsuit, and operating multiple credit card merchant accounts to evade collection efforts by Plaintiffs armed with enforceable judgments. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their online money accounts, in this case PayPal and other online money accounts, to off-shore bank accounts outside the jurisdiction of this Court.

25. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Pro-Wax100 Marks in connection with the advertisement, distribution, offering for sale, and sale of infringing and counterfeit Pro-Wax100 Marks-labeled products into the United States and Illinois over the Internet. Each Defendant Wish account shipped infringing and counterfeit products to the United States, including Illinois, and has in fact sold or offered for sale the products during the course of Plaintiff's preliminary investigations.

26. Defendants' use of the Pro-Wax100 Marks in connection with the advertising, distribution, offering for sale, and sale of infringing and counterfeit Pro-Wax100 products, including the sale of counterfeit and infringing products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

27. The Defendants sell their Pro-Wax100 wax warmers with counterfeit TM730 branding in the United States and Illinois over the Internet on Wish sites. The infringing products offered by the Defendants vary in color and minor design flourishes, but are all using counterfeit TM730 branding. Representative images of the infringing and counterfeit wax warming products are provided below (represented by example):



28. While the Defendants' products all differ slightly in color and inconsequential elements, they all feature the prominent Pro-Wax100 Marks.

29. Defendants produce infringing and counterfeit products featuring the Pro-Wax100 Marks. The example provided above clearly uses the TM730 owned by the Plaintiff.

30. Plaintiff has been damaged by the foregoing infringing, counterfeiting, and wrongful acts of the Defendants, including, without limitation, suffering actual damages.

31. By manufacturing counterfeit Pro-Wax100 Marks-bearing wax warmers, the Defendants willfully and knowingly caused a likelihood of confusion or misunderstanding as to, inter alia, the sponsorship and approval of the Defendants' products and services being offered and sold by the Defendants in connection with the Pro-Wax100 Marks. Such wrongful conduct also caused a likelihood of confusion or misunderstanding as to the affiliation, connection or association of the Defendants' product and services with those of the Plaintiff.

32. Defendants' wrongful conduct, infringing activities, and sale of counterfeit products will continue unless enjoined by this Court.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

33. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

34. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiff Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Plaintiff Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff products offered, sold or marketed under the Plaintiff Trademarks.

35. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Plaintiff Trademarks without Plaintiff's permission.

36. Plaintiff is the exclusive owner of the Plaintiff Trademarks. Plaintiff's United States Registrations for the Plaintiff Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Plaintiff Trademarks, and are willfully infringing and intentionally using counterfeits of the Plaintiff Trademarks. Defendants' willful, intentional and unauthorized use of the Plaintiff Trademarks is

likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Plaintiff Products among the general public.

37. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Plaintiff Trademarks.

39. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Plaintiff Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

41. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Plaintiff Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Plaintiff Products by Plaintiff. By using the Plaintiff Trademarks on the Counterfeit Plaintiff Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Plaintiff Products.

42. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Plaintiff Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, et seq.)

44. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their infringing wax warmer products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiff's products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

46. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2, et seq.

47. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its exclusivity to its rightfully Pro-Wax100 branding, reputation and

goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) A judgment entered in favor of Plaintiff on its claim that Defendants have directly and/or indirectly infringed, have violated the Illinois Uniform Deceptive Trade Practices Act, sold counterfeit Pro-Wax100 Marks products, and sold products with false designations of origin;

2) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, though, under, or in active concert with them, pursuant to 35 U.S.C. §283 be temporarily preliminarily, and permanently enjoined and restrained from:

    a. using the Pro-Wax100 Marks, infringing and counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Pro-Wax100 products, or are not authorized by Plaintiff to be sold in connection with the Pro-Wax100 Marks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Pro-Wax100 Marks product, or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale featuring Pro-Wax100 Marks;

      c.      committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs

      d.      further infringing the Pro-Wax100 Marks and damaging Plaintiff's goodwill;

      e.      otherwise competing unfairly with Plaintiff in any manner;

      f.      shipping, delivering, manufacturing, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which utilize the Pro-Wax100 Marks, or any reproductions, infringing copies, counterfeit copies. or colorable imitations thereof;

      g.      using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or websites, or any other online marketplace account or website that is being used to sell or is the means by which Defendants could continue to sell infringing or counterfeit Pro-Wax100 Marks products; and

      h.      operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale products or inventory not authorized by Plaintiff which bear the Pro-Wax100 Marks;

3)      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written

14

report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

   4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces and any related Wish entities, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall :

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of infringing or counterfeit Pro-Wax100 Marks products; and

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit Pro-Wax100 Marks products;

    c. take all steps necessary to prevent links to the Defendant Online Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index;

   5) Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the

Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

6) A judgment and order that Defendants make an accounting to Plaintiff and pay over to Plaintiff:

    a. all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Pro-Wax100 Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

    b. in the alternative, damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Pro-Wax100 Marks;

    c. all damages suffered by Plaintiff in accordance with the law pursuant to 815 ILCS § 510(3) and other applicable laws; and

    d. for actual damages or other available damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial.

7) That this case, including Defendants prosecution of its claims, be declared exceptional and Plaintiff be awarded its costs, expenses, and reasonable attorneys' fees in this action pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, 815 ILCS § 510/3, and other applicable law; and

8) Award any and all other relief that this Court deems just and proper.

DATED June 15, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**OUYEINC LTD.**

　　　　　　　　　　　　　　　　　　　　By: /s/ James A. Karamanis
　　　　　　　　　　　　　　　　　　　　James A. Karamanis
　　　　　　　　　　　　　　　　　　　　Barney & Karamanis, LLP
　　　　　　　　　　　　　　　　　　　　Two Prudential Plaza
　　　　　　　　　　　　　　　　　　　　180 N. Stetson, Ste 3050
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60601
　　　　　　　　　　　　　　　　　　　　Tel.: 312/553-5300
　　　　　　　　　　　　　　　　　　　　Attorney No. 6203479
　　　　　　　　　　　　　　　　　　　　James@bkchicagolaw.com

　　　　　　　　　　　　　　　　　　　　*ATTORNEY FOR PLAINTIFF Ouyeinc Ltd.*