IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OUYEINC LTD., | Case No. 20-cv-03488 |
| Plaintiff, | **Judge Sharon Johnson Coleman** |
| v. | |
| 1 Baaaai et al., | |
| Defendants. | |

### *AMICUS CURIAE* BRIEF REGARDING
### DEFENDANTS' OMNIBUS MOTION TO DISMISS [67]

Levi Strauss & Co., Entertainment One UK Ltd., and Costa Del Mar, Inc. ("Amici") respectfully submit this brief as *amicus curiae* regarding the Moving Defendants ("Defendants") Omnibus Motion to Dismiss [67]. Amici's brief addresses the following:

1. Plaintiff Ouyeinc Ltd. ("Plaintiff") did not address Defendants' arguments regarding subject matter jurisdiction and the Lanham Act's extraterritorial reach, so the legal record on this issue is deficient. Defendants' counsel has raised this argument in a motion in a factually similar case and it was rejected by a Court in this District.[1] The Lanham Act provides original jurisdiction to the District Courts over all trademark actions. 15 U.S.C. § 1121. Plaintiff alleged (1) an injury in the United States, (2) that Defendants target consumers in the United States, and (3) that Defendants make infringing products available to consumers in the United States. The fact that Defendants allegedly did not actually sell any infringing products is immaterial, because liability under the Lanham Act can be based on advertising or promotion alone. Because this case

---

[1] *Robert Andrew Ffrench v. The Partnerships, et al.*, No. 20-cv-03178 (N.D. Ill. Mar. 26, 2021) (Docket Entry No. 89).

1

involves issues of trademark infringement of products used in commerce, this Court is vested with subject matter jurisdiction and Defendants' Motion should be denied.

2. Amici respectfully would like to provide the Court an overview of Seventh Circuit cases regarding personal jurisdiction over "interactive website" operators because the legal record provided by the parties was deficient. A specific jurisdiction analysis under Seventh Circuit jurisprudence requires the court to evaluate: (1) defendant's actions targeting the jurisdiction leading up to any offer for sale (*i.e.*, "defendant reaching out"); and (2) whether the product offered for sale is related to the litigation. In *Hemi Group* and *Curry*, the Seventh Circuit found specific jurisdiction proper where the defendant operated an e-commerce store that offered for sale a product into the district and the product related to the litigation.[2] Conversely, the Seventh Circuit found specific jurisdiction lacking in *be2* and *Mobile Anesthesiologists* where neither defendant offered for sale any product into the district[3] and in *Advanced Tactical* and *Matlin* where the product offered for sale was unrelated to the litigation.[4] In this case, the only purpose for Defendants' e-commerce store on the U.S. facing Wish.com portal was to sell products to United States consumers, including an allegedly infringing product that is the basis for the lawsuit. An Wish.com e-commerce store is not merely an "interactive website" like a dating portal (*be2*) or informational website (*Mobile Anesthesiologists*) (see Point 2 below). Moreover, the sales (or lack thereof) that follow from a defendant setting up an e-commerce store offering for sale a product into the jurisdiction (*i.e.* "Illinois residents reaching back") are not dispositive or even material to

---

[2] *Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2009); *Curry v. Revolution Labs., LLC,* 949 F.3d 385 (7th Cir. 2020)
[3] *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010).
[4] *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014); *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019).

the jurisdiction analysis under Seventh Circuit law. The sales to Illinois residents in *Curry* and *Hemi* provided further confirmation regarding the defendants' established intention to conduct business in the district. This makes sense as a plaintiff cannot determine how many sales an offshore e-commerce store shipped into the district prior to filing a lawsuit and obtaining discovery.

While the Seventh Circuit in *Hemi* stated that "[p]remising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and the consumers in the forum state, would create almost universal personal jurisdiction because of virtually unlimited accessibility of websites across the country," this ignores Defendants' own actions involved with opening an Wish.com e-commerce store with the sole purpose to sell to United States consumers that go beyond "maintaining a website" (see Point 2 below).[5] Finding that e-commerce sellers like Defendants merely operate "interactive websites" that are accessible across the country would force plaintiffs to speculate whether defendants sold enough products into a specific jurisdiction when filing a lawsuit. Defendants would then receive "the benefit of a nationwide business model with none of the exposure" (*Hemi Grp LLC*, 622 F.3d at 760), including Illinois, the sixth most populous state. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010). Counterfeiters like Defendants avail themselves of the Illinois market: for example, recent U.S. Customs and Border Protection seizures included nearly $636,000 of counterfeit handbags, jewelry, and accessories at the International Mail Facility in Chicago, Illinois, and over $6.5 million counterfeit goods at O'Hare Airport in April 2021.[6] If Defendants are offering to sell and selling into Illinois, asserting jurisdiction over them in Illinois is fair.

---

[5] Additionally, the Court in *Hemi* was distinguishing a previous Seventh Circuit decision *Jennings v. AC Hydraulic A/S* where a website only provided information, as opposed to selling products.
[6] *CBP: Make Sure to Buy Mom the Real Thing This Mother's Day*, U.S. Customs and Border Protection (Apr. 30, 2021), https://www.cbp.gov/newsroom/national-media-release/cbp-make-sure-buy-mom-real-

3. The factual record provided by the parties regarding personal jurisdiction is materially deficient, and missing facts regarding Defendants' own actions involved with opening a Wish.com e-commerce store. These actions establish Defendants' purposeful targeting of the United States, including Illinois, and go well beyond "maintaining a website." Defendants were required to select the United States, including Illinois, from a list of regions in which the Wish.com e-commerce store is electing to do business. Defendants also set up storefronts through which U.S. customers, including Illinois customers, could purchase allegedly infringing products in U.S. dollars and maintained logistics for shipping those products to Illinois. Finally, by offering a product for sale on Wish.com to Illinois, the e-commerce store operator contractually agreed to accept orders from Illinois residents and fulfill orders as soon as the "place your order" button was clicked since money is instantly exchanged. Any suggestion that Defendants could affirmatively set up an Wish.com e-commerce store targeting the United States and Illinois, offer for sale an allegedly infringing product on that store, accept money and then unilaterally decide whether to accept and fulfill an order based on the buyer is both factually inaccurate and in violation of basic contract law and Defendants' agreement with Wish.

4. The only function of an Wish.com e-commerce store is to sell products to consumers in the United States, including Illinois. If it was determined that personal jurisdiction did not exist in Illinois, then there must be personal jurisdiction over the Wish.com e-commerce store under Fed. R. Civ. P. 4(k)(2) since the store targeted the United States. Owners of United States trademarks must have access to federal courts in the United States to enforce their United States trademark rights and protect consumers in the United States. Defendants cannot insulate themselves from harm that they cause in the United States, including Illinois, by simply locating

---

thing-mother-s-day; *Over $6.5M Counterfeit Goods Seized at O'Hare Airport in April*, NBC Chicago, (May 7, 2021), nbcchicago.com/top-videos-home/over-6-5m-counterfeit-goods-seized-at-ohare-airport-in-april.

themselves within the borders of China or any other country and explicitly offering to sell and ship products to the United States, including Illinois.

## MEMORANDUM

I.     **BACKGROUND ON WISH.COM E-COMMERCE STORE OPERATORS**

Defendants are e-commerce stores on Wish.com ("Wish"). Wish "allows consumers from around the world to buy deeply discounted goods from China, directly from sellers or manufacturers there." Gaudio Declaration at ¶ 2. "Wish is emblematic of a growing trend in e-commerce: shoppers buying directly from Chinese manufacturers and merchants." *Id*. According to 2020 Forbes article, Wish sells through three million items each day with roughly a third of its order volume coming from the United States. *Id*. at ¶ 3. Wish sellers can select entire countries or regions where they will ship products, including the option to ship only to the United States. Declaration of Lijia Chen ("Chen Declaration") at ¶¶ 3-6. When a Wish seller chooses to ship only to the United States, their items can be purchased only by customers from the United States. *Id*. Likewise, if they choose to ship to selected countries or regions, items can only be purchased by customers from the countries or regions that they select. *Id*. Wish sellers are required to fulfill all orders placed in five (5) calendar days, or the order will be auto-refunded and the associated product may be disabled. *Id*.

II.     **ARGUMENT**

1. **Subject Matter Jurisdiction is Proper Over a Case Involving Federal Lanham Act Claims.**

The Court properly exercised subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., §§ 1338(a)-(b), and 28 U.S.C. § 1331. *See Robert Andrew Ffrench v. The Partnerships, et al*., No. 20-cv-03178 (N.D. Ill. Mar. 26, 2021) (Docket Entry No. 89). In considering a motion to dismiss for lack of subject

5

matter jurisdiction, the Court must accept the complaint's well-pleaded allegations as true and draw reasonable inferences from those allegations in Plaintiff's favor. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 829 (N.D. Ill. 2000). Defendants' argument about whether the Lanham Act applies extraterritorially is a question on the merits, rather than a question of whether this Court has the power to hear the case, and confuses failure to state a claim with a lack of subject matter jurisdiction. *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 497-98 (5th Cir. 2018) ("Nagravision based its lawsuit on violations of federal law, and subject matter jurisdiction is clearly present").

The Lanham Act provides original jurisdiction to the district courts over all trademark actions. 15 U.S.C. § 1121. The Lanham Act provides a civil action, in pertinent part, against:

> **Use in commerce** any reproduction, counterfeit, copy, or colorable imitation of a registered mark **in connection** with the sale, **offering for sale**, distribution, or advertising of any goods . . . on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114 (emphasis added).

There are "two essential requirements a plaintiff must allege to survive a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction: (1) the trademark violation was in connection with any goods or services, and (2) the defendant used the trademark in commerce." *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 830 (Court held that even though an item was not shipped to Illinois, foreign defendant's use of plaintiff's mark on the item was considered use in commerce in violation of the Lanham Act). The fact that Defendants did not actually sell any infringing products is immaterial, because liability under the Lanham Act can be based on advertising or promotion alone. *New Balance Ath., Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 2019 U.S. Dist. LEXIS 208759, at *10 (D. Dela. Dec. 4, 2019) (citing *VersaTop Support Sys., LLC v. Ga. Expo, Inc.*, 921 F.3d 1364, 1365-66 (Fed. Cir. 2019)), *BMW of N. Am., LLC v. Barreira*, 633 F. App'x

882, 884 (9th Cir. 2015), *DealerX v. Kahlon*, 2017 U.S. Dist. LEXIS 194452, at *4 (E.D. Cal. Nov. 27, 2017)). The court in *New Balance* found that it had subject matter jurisdiction over a China-based defendant that advertised goods bearing infringing trademarks on its website, even though none of the products were shipped to or sold in the United States. *Id*. at *10.

Defendants based their argument mostly on Section 1127 of Lanham Act, which defines "commerce" as "all commerce which may lawfully be regulated by Congress." [67] at p. 2. However, several courts have held that the definition of "use in commerce" in Section 1127 sets the standard for a mark to qualify for *protection or registration,* not the standard for proving infringement. *New Balance Ath., Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 2019 U.S. Dist. LEXIS 208759, at *8 (collecting cases). Further, in *McBee v. Delica Co., Ltd*, the First Circuit distinguished between the facts of *Steele v. Bulova Watch Co.*, and other cases involving foreign sellers and sales to consumers inside the United States: "[c]ourts have repeatedly distinguished between domestic acts of a foreign infringer and foreign acts of that foreign infringer; the extraterritoriality analysis to determine [subject matter] jurisdiction attaches only to the latter." 417 F.3d 107, 121 (1st Cir. 2005).

2. **Personal Jurisdiction Is Proper Over Defendants Because They Directed Their Activities to the Illinois Market and the Cause of Action Relates to Those Activities.**

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case[7] for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392-93 (7th Cir. 2020). "The question is whether the Court may exercise specific personal jurisdiction, which applies when a defendant has directed its activities at the

---

[7] If necessary, Plaintiff is entitled to discovery. *See Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co.*, 2003 LEXIS 10127, at *12 (N.D. Ill. June 13, 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.").

forum state, and when the cause of action relates to those activities." *See Volkswagen AG v. iman365-usa*, No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *7-8 (N.D. Ill. Feb. 28, 2020) *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The defendant's conduct must be purposefully directed at the forum state, such that the defendant would anticipate being haled into court here. *Id*. (*citing Walden v. Fiore*, 571 U.S. 277, 284-85, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)).

In *Illinois v. Hemi Grp. LLC*, the Seventh Circuit explained that, "Hemi stood ready and willing to do business with Illinois residents." 622 F.3d 754, 757-58 (7th Cir. 2009). "It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id*. at 758. As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*. Following *Hemi*, the Seventh Circuit in *Curry v. Revolution Labs., LLC* determined that personal jurisdiction was proper over non-resident e-commerce store operators:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois. Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address.
>
> Revolution's own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful. Preparing to engage in commercial activity, Revolution created an interactive website and explicitly provided that Illinois residents could purchase its products through that website. It further arranged for the sale of its products through third-party websites. After the sales, Revolution sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address, and, finally, Revolution shipped Diesel Test to its customers who were in Illinois.

949 F.3d at 399. Under this precedent, Illinois courts have consistently exercised personal jurisdiction over non-resident e-commerce store operators. *See, e.g., Tommy Hilfiger Licensing LLC et. al. v. The P'ships, et al.*, No. 20-cv-7477 (N.D. Ill March 24, 2021) (Dkt. No. 46) (unpublished) ("Hilfiger has offered evidence tending to show that [defendant], though not physically located in Illinois or even in the United States, operated an interactive website through which it purposefully offered products for sale to consumers, including consumers located in Illinois, who would then select an address where the products should be shipped, including Illinois as one of the options. This is enough to amount to [defendant] having purposefully availed itself of doing business in Illinois."); *Mori Lee v. Partnerships*, No. 19-cv-7555 (N.D. Ill. May 14, 2020) (Dkt. No. 60) (unpublished);[8] *Volkswagen AG v. iman365-usa,* No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *11 (N.D. Ill. Feb. 28, 2020); *Conair Corp., et al. v. Chen Xin, et al.*, No. 16-cv-09693 (N.D. Ill. Mar. 22, 2017); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015); *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015).

    a. **Defendants Directed Their Activities to the Illinois Market.**

Here, Defendants "stood ready and willing to do business with Illinois residents" by creating and operating its interactive e-commerce store through which the allegedly infringing products could be purchased. *Hemi Grp*, 622 F.3d at 758; *Curry,* 949 F.3d at 399. Defendants chose to operate a store on Wish.com. Defendants affirmatively selected the United States from a list of regions to do business with, stood ready to accept payment from Illinois residents, and offered to ship counterfeit products to Illinois. *Hemi Grp*, 622 F.3d at 758; *Curry*, 949 F.3d at

---

[8] The Court in *Mercis B.V. v. The Partnerships, et al*., No. 20-cv-06422 (N.D. Ill. Mar. 1, 2021) (Feinerman, J.) found that there was personal jurisdiction following the rationale of *Mori Lee* and denied a motion to dismiss.

399. By offering a product for sale on Wish.com to Illinois, Defendants contractually agreed to accept orders from Illinois residents and fulfill orders as soon as the "place your order" button was clicked since money is instantly exchanged. Chen Declaration at ¶¶ 3-8. Once an Wish.com customer clicks "place your order," the customer pays money for the product and receives a confirmation email with their shipping address. Therefore, Defendants' reaching out and expressly electing to do business with the residents of all fifty states, including Illinois, the sixth most populous state, establishes personal jurisdiction over Defendants. *Hemi Grp*, 622 F.3d at 758; *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010); *see also, Monster Energy Co.*, 136 F. Supp. 3d at 909 ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Christian Dior Couture, S.A.*, 2015 U.S. Dist. LEXIS 158225 at *6 (same).

      b. **Product Offered for Sale Is the Subject of the Litigation.**

Defendants were selling, offering for sale, and advertising a product using counterfeit versions of Plaintiff's federally registered trademarks to residents of the United States, including residents of Illinois. These actions are the subject of Plaintiff's trademark infringement claims, so Defendants' contacts with Illinois are related to the claims in this suit. *See Curry*, 949 F.3d at 401 ("The gravamen of his case is that Revolution's advertisement and sale of its product in the national market caused confusion and consequently deprived Mr. Curry of the value of his trademark in those states, *including Illinois*, where the product was sold . . . The defendant's activity in the state is the very activity that allegedly caused the confusion at the heart of this litigation").

    3. **Other Seventh Circuit Cases Are Distinguishable.**

Other Seventh Circuit decisions regarding "interactive websites," specifically, *Advanced Tactical, Matlin, be2,* and *Mobile Anesthesiologists,* are distinguishable because they either did

not affirmatively offer to sell and ship any tangible products to Illinois (*be2* and *Mobile Anesthesiologists*) or the products offered for sale to Illinois residents did not relate to the cause of action (*Advanced Tactical* and *Matlin*).

In *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, the Court found that specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state. 751 F.3d 796, 801 (7th Cir. 2014). Based on this finding, the Court found that the sales to Indiana residents were not linked to the litigation because the goods sold on the website were non-infringing and were unrelated to the lawsuit. *Id*. Conversely, in this case, jurisdiction is based on Defendants' offer for sale of allegedly infringing products to Illinois residents, which is the subject of and inextricably linked to Plaintiff's trademark infringement and counterfeiting claims.

*Matlin v. Spin Master Corp.*, 921 F.3d 701, 704 (7th Cir. 2019), is distinguishable because *Matlin* involved a breach of contract with a Virginia-based company as opposed to "the type of case where the defendants sold and shipped a defective product into Illinois that injured residents there." *Id*. at 707. Additionally, in *Matlin*, the plaintiff's purchase of the product occurred after the motion to dismiss was filed and was unrelated to the subject matter of the lawsuit. *Id*. Conversely, in this case, jurisdiction is based on Defendants' actions which include affirmatively creating U.S. facing e-commerce stores that are offering to sell and ship allegedly infringing products to the United States, including Illinois. This conduct is the subject of and inextricably linked to Plaintiff's trademark infringement and counterfeiting claims.

The Court in *Matlin v. Spin Master Corp.* also distinguished the defendant's scale of contact with Illinois from the defendant's systematic conduct through repeated sales to Illinois in *Hemi*, but quoted language regarding the "stream of commerce" theory of personal jurisdiction.

11

921 F.3d. at 706. Cases including a standard stream-of-commerce analysis usually involve entities who cannot necessarily predict or control where downstream their products will land; intervening actors like distributors may take the products to unforeseeable markets. Here, Defendants affirmatively created e-commerce stores, then offered to sell and ship allegedly infringing products into the U.S., including Illinois, which indicates Defendants stood ready and willing to do business with Illinois residents.

Defendants' Motion argues that there was not "an actual sale of any allegedly infringing product to consumers in Illinois during any operative time period." [67] at p. 15. However, this focuses on "the residents reaching back" and not Defendants' own actions in setting up their e-commerce stores reaching out to do business in Illinois. *Hemi Grp.*, 622 F.3d at 758; *see also*, *Virgin Enters.*, 2014 U.S. Dist. LEXIS 98437, at *12 (*"Hemi [Group]* also shows that the precise dollar value of Defendants' sales to Illinois customers—either as an absolute number or as a percentage of total sales—is not dispositive for purposes of determining whether specific personal jurisdiction exists."); *Dental Arts Lab.*, 2010 U.S. Dist. LEXIS 124029, at *7 ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."). It also conflates the requirements for general and specific jurisdiction. *Cf. Daimler AG v. Bauman*, 134 S.Ct. 746, 762 n.20 (2014) ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide"). Focusing on Defendants' actions in setting up the Wish.com e-commerce stores that target U.S. consumers, instead of just sales, makes sense as there is no way for a plaintiff to know how many products were sold into the jurisdiction until after a case is filed and some discovery is conducted.

This also suggests that some number of sales are necessary to establish personal jurisdiction. Courts have expressly declined to classify actions such as Defendants' as "utterly

fortuitous" or "unilateral": Defendants "aimed their alleged tortious products to residents in all fifty states and 'made [their] services available to anyone by way of [their] website[s]….'" *Valtech, LLC*, 2015 U.S. Dist. LEXIS 17138, at *12. In this case, Defendants' offer for sale to an Illinois resident of allegedly infringing product occurred before the lawsuit and is the subject of the lawsuit. *See Monster Energy Co.*, 136 F. Supp. at 907-08 ("Defendants do not provide any evidence to suggest that they were induced by fraud to post images of counterfeit Monster Energy Products and invite potential Illinois buyers to place orders and buy counterfeit products.").

Finally, the defendant in *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.* was an entity that operated only in Texas whose sole member had never attempted to conduct business or conducted business in Illinois, but had an informational website about its business. 623 F.3d at 444. Here, Defendants affirmatively offered to sell and ship infringing products to Illinois.

4. **Defendants' Conduct Was Purposefully Directed at the Forum State Such that Defendants Would Anticipate Being Haled into Court Here.**

Under both the Illinois Long Arm Statute and Fed. R. Civ. P. 4(k)(2), notions of fair play and substantial justice are satisfied. Illinois has a strong interest in protecting Illinois consumers from being duped into purchasing allegedly infringing products. Furthermore, modern transportation and communications have made it less burdensome for a party to defend itself in a State where he derives economic benefits. *Burger King*, 471 U.S. at 474. Finally, fair play means that off-shore e-commerce store operators that decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable. *Christian Dior Couture, S.A.*, 2015 U.S. Dist. LEXIS 158225 at *13. Defendants "certainly should not be surprised by the jurisdictional consequences of [their] actions" given that they had sufficient resources to purposefully avail themselves of the Illinois market. *Id*. at *14.

While *Hemi* stated that "[p]remising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and the consumers in the forum state, would create almost universal personal jurisdiction because of virtually unlimited accessibility of websites across the country," this ignores Defendants' own actions involved with opening an Wish.com e-commerce store with the sole purpose to sell to United States consumers that go beyond "maintaining a website." Finding that e-commerce sellers like Defendants merely operate "interactive websites" that are accessible across the country would force plaintiffs to speculate whether Defendants sold a sufficient number of products into a specific jurisdiction before being able to file a lawsuit and obtain discovery.

Indeed, Defendants would then receive "the benefit of a nationwide business model with none of the exposure" (*Hemi Grp LLC*, 622 F.3d at 760), including Illinois, the sixth most populous state. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010). If jurisdiction would only be appropriate outside of the United States, as suggested by the Court's citation of this language from *Hemi*, "United States consumers, and parties like [Plaintiff], who claim to be harmed by Defendants' acts, will have no access to the federal courts in the United States, and the protections of the Lanham Act, will not be available." *Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 at *12. While litigating in the United States may impose some burden on Defendants, "that is not a reason in itself to decline to exercise personal jurisdiction over them." *Strabala v. Zhang*, 318 F.R.D. 81, 112 n.33 (N.D. Ill. 2016). Moreover, a foreign jurisdiction would be inappropriate for Plaintiff's claims under U.S. trademark law because, among other reasons, the United States and Illinois have a stronger interest in seeing that their citizens would have the protection of these consumer protection laws. *Luxottica Grp. S.p.A. v. Zhiqiang Zhao*, 2017 U.S. Dist. LEXIS 38527, at *6 (N.D. Ill. Mar. 17, 2017).

5. **Alternatively, Personal Jurisdiction Is Proper in This Court Pursuant to Fed. R. Civ. P. 4(k)(2).**

There can be no question that Defendants' Wish.com e-commerce stores targeted the United States. As such, should this Court determine that personal jurisdiction is not proper under Fed. R. Civ. P. 4(k)(1) based on the Illinois long arm statute, personal jurisdiction is proper in this Court pursuant to Fed. R. Civ. P. 4(k)(2) ("Rule 4(k)(2)"). Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Southeast and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000); *Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d 1, 5 (1st Cir. 2018). Rule 4(k)(2) extends federal jurisdiction over non-resident defendants having sufficient contacts with the United States as a whole, but having insufficient contact with any single state to support jurisdiction. Fed. R. Civ. P. 4(k)(2) advisory committee's note (citing *Omni Capital Int.'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 111 (1987)). The first element of Rule 4(k)(2) is satisfied here because Plaintiff's claims arise under federal trademark law. Likewise, the second element is satisfied because Defendants have not named a suitable forum state. *See Robert Bosch LLC v. Trico Prods. Corp.*, 2013 U.S. Dist. LEXIS 103311, at *6 (N.D. Ill. July 24, 2013). The third and fourth elements of the Rule 4(k)(2) analysis require the same minimum contacts due process analysis conducted under Rule 4(k)(1)(A), the only difference being that the relevant forum is the United States as a whole, not an individual State. *Id*. at *5. As such, the third and fourth elements are satisfied here for the same reasons that satisfy the minimum contacts analysis required by Rule 4(k)(1)(A).

Dated this 25th day of May 2021.      Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Amici Levi Strauss & Co., Entertainment One UK Ltd., and Costa Del Mar, Inc.*

**CERTIFICATE OF SERVICE**

 I hereby certify that on the 25th day of May 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Amici Levi Strauss & Co., Entertainment One UK Ltd., and Costa Del Mar, Inc.*